# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2232
_____

Barbara Perry

*Plaintiff - Appellant*

v.

Zoetis, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: May 11, 2021
Filed: August 6, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Barbara Perry sued her former employer, Zoetis, LLC, because she thought it discriminated against her by paying her less than similarly situated male employees.

The district court[1] granted summary judgment to Zoetis because Perry failed to make a prima facie case of sex discrimination. Perry appeals that decision, arguing that the district court misapplied the law. We affirm.

I.

Zoetis is an animal health company that makes veterinary vaccines and pharmaceuticals. It employs lab technologists who have different duties, job requirements, and responsibilities based on seniority. There are four grades of lab tech. From lowest to highest: 10-2, 20-1, 20-2, and 30-1. Perry started in the microbiology lab in September 2013 at the lowest grade lab tech position and was paid $16.50 per hour. Zoetis promoted her to the next grade in April 2015 and increased her pay to either $17.41 or $17.93 per hour. When she resigned in April 2017, Perry was a 20-1 lab tech making $18.99 per hour. Zoetis does not dispute that Perry took on many extra tasks and responsibilities and that she was a good employee.

Perry became dissatisfied with her pay when she found a former coworker's hiring documents in his desk after he was fired. The documents revealed that the coworker, N.G., had a starting pay of $21.00 per hour when he was hired for the highest grade position in November 2015. The district court found that Zoetis's lab supervisor and its human resource manager set N.G.'s pay rate based on his education, training, and relevant experience. Zoetis fired him after eight months because his performance did not meet expectations.

Perry met with Zoetis's human resources manager to discuss the difference in pay. She told the manager that she "was performing more job duties and making less

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

money than what [N.G.] had been making." App. 78–79. Perry's later requests for a raise were denied, and she quit four months after the meeting. A year later, Perry sued Zoetis, arguing that it violated the Nebraska Equal Pay Act and the Nebraska Fair Employment Practices Act by giving her male counterparts better pay despite her stronger work performance. Perry pointed to N.G. and M.F., a male lab tech employed at grade 20-2, as similarly situated male employees who were paid more.

Zoetis removed the case to federal court based on diversity jurisdiction and both parties moved for summary judgment. The court granted summary judgment to Zoetis on all of Perry's claims, finding that the "uncontroverted evidence demonstrate[d] that the pay differentials between [Perry] and her two compar[a]tors are due to factors 'other than sex.'" D. Ct. Dkt. 84 at 15. Perry appeals, arguing that the court misapplied the law and disregarded evidence that showed there was a genuine issue of material fact.

## II.

We review a grant of summary judgment *de novo*. *Brown v. Diversified Distrib. Sys., LLC*, 801 F.3d 901, 907 (8th Cir. 2015). We view the record in the light most favorable to Perry, and we will affirm the grant of summary judgment if there are no genuine issues of material fact. *Id.* "Because this is a diversity case, we apply state substantive law and federal procedural law." *Smith v. Toyota Motor Corp.*, 964 F.3d 725, 728 (8th Cir. 2020). The Nebraska Equal Pay Act (NEPA) and the Nebraska Fair Employment Practices Act (NFEPA) are both modeled on their federal law counterparts, so Nebraska applies federal caselaw. *Knapp v. Ruser*, 901 N.W.2d 31, 46 (Neb. 2017); *Hartley v. Metro. Utils. Dist. of Omaha*, 885 N.W.2d 675, 692 (Neb. 2016).

## A. Nebraska Equal Pay Act

Perry argues that the district court erred by granting summary judgment to Zoetis on her NEPA claim. When bringing a claim of pay discrimination based on sex under the NEPA, a plaintiff must first establish a prima facie case. *Knapp*, 901 N.W.2d at 46; *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011). This requires Perry to show that: "(1) she was paid less than a male employed in the same establishment; (2) for equal work on jobs requiring equal skill, effort, and responsibility; (3) which were performed under similar working conditions." *Knapp*, 901 N.W.2d at 46; *see also* Neb. Rev. Stat. § 48-1221(1). This case turns on the second element—whether the jobs required equal skill, effort, and responsibility.

The record shows that N.G.'s and M.F.'s positions called for different skills and had materially different responsibilities than Perry's. Perry says that she actually performed all the duties of M.F.'s job and most of the duties of N.G.'s job. But she presents no facts that would establish that she was *required* to do so. The record shows that Perry was a diligent worker who frequently volunteered to take on tasks that Zoetis did not require.[2] While Perry's work ethic is laudable, the fact that she was not paid more for the extra tasks, or for her skill in completing them, is not proof of sex discrimination. *See* 29 C.F.R. § 1620.15(a) ("Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill. The efficiency of the employee's performance in the job is not in itself an appropriate factor to consider in evaluating skill."); *see also Cullen*

---

[2]Perry's arguments that she performed many of the duties of the higher grade lab tech positions better than her male comparators actually highlight the differences in duties and responsibilities between her position and theirs. Compared to Perry's 20-1 position, the record establishes that M.F.'s 20-2 position had 12 more assigned duties and that N.G.'s 30-1 position had 28 more.

*v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 699 (7th Cir. 2003) ("[T]he comparison at this juncture is between positions, not individuals.").

Perry says that the district court erred in its comparison of her job and the jobs of her comparators by relying only on Zoetis's general descriptions of their requirements and responsibilities. It is true that "neither job classifications nor titles are dispositive for determining whether jobs are equal." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002). But before the court could begin to compare the actual work performed by the male and female employees, Perry was required to present evidence that shows they "were doing equal work requiring equal responsibility." *Knapp*, 901 N.W.2d at 47 (cleaned up) (citation omitted). She did not. Nothing in the record suggests that Perry's position required her to take on the additional duties and responsibilities of her higher-ranked coworkers. Because the facts presented were insufficient to establish Perry's prima facie NEPA case, the district court properly granted Zoetis's motion for summary judgment.

## B. Nebraska Fair Employment Practices Act

Perry next argues that the district court erred in granting summary judgment to Zoetis on her NFEPA claim. When bringing a claim of pay discrimination based on sex under the NFEPA, a plaintiff "may survive an employer's motion for summary judgment in one of two ways." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). She may either produce direct evidence of the discrimination, or she may present a genuine dispute using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCullough*, 559 F.3d at 860. She does not succeed either way.

Perry says that she presented direct evidence that shows "a strong causal link between the alleged discriminatory bias and the adverse employment decision."

*Id.* at 861. She points only to her testimony recalling the meeting with Zoetis's human resource manager. In Perry's own words, "I told [the manager] that I was performing more job duties and making less money than what [N.G.] had been making. . . . [The manager] looked on the computer. And then she told me that he wasn't making that much more than I was making." App. 78–79. This is not direct evidence of discrimination. Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." *McCullough*, 559 F.3d at 861. While Perry's testimony establishes that there was a difference in pay between two differently ranked employees, it does not "provide[] a strong causal link between the alleged discriminatory bias" and the pay difference. *Id.*

Without direct evidence, Perry must establish a prima facie case under the *McDonnell Douglas* framework. If she can, "then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason" for paying Perry less than her male coworkers. *Id.* at 860. If Zoetis produces evidence that suggests nondiscriminatory reasons, then the burden shifts back to Perry to prove that Zoetis's reasons "were not its true reasons, but were a pretext for discrimination." *Hartley*, 885 N.W.2d at 694 (citation omitted). The Nebraska Supreme Court has found the *McDonnell Douglas* framework to be an appropriate method for resolving a discrimination claim. *Knapp*, 901 N.W.2d at 43.

To prove her prima facie case, Perry must show that: (1) she is a member of a protected class; (2) she was qualified to work in the position she was in; (3) she suffered an adverse employment action; and (4) she was treated differently than the male employees who were similarly situated at Zoetis. *Id.* Perry satisfies the first three prongs, but her prima facie case under the NFEPA fails for the same reasons her NEPA claim failed. She does not point to any facts that would support an inference that the male employees to whom she compares herself were "similarly situated in all relevant respects." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir.

2016) (citation omitted).  Her proposed male comparators were lab techs with different duties and responsibilities.

Even assuming that Perry's argument could shift the burden onto Zoetis, her case would still fail to survive summary judgment.  Zoetis produced "evidence that would support a finding that unlawful discrimination was not the cause of the employment action." *Hartley*, 885 N.W.2d at 694.  It showed that N.G. earned more than Perry because new employee pay rates were based on different levels of responsibility, the employee's education, and their related experience.  Zoetis also showed that M.F. earned more because Zoetis has an internal policy to keep an employee's pay rate the same when they transfer from a different department.  This evidence is enough to rebut Perry's proposed prima facie case.

To survive summary judgment, Perry had to show some evidence suggesting Zoetis "offered a phony excuse" for the disparate treatment.  *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (citation omitted).  She did not. Because Perry's evidence was insufficient either to establish her prima facie case under the NFEPA or to show that Zoetis's reasons for the pay disparity were pretextual, the district court properly granted Zoetis's motion for summary judgment.

III.

The judgment of the district court is affirmed.

_____